Good morning, Your Honors. May it please the Court, I have the honor and privilege today of representing Hurricane Navigation and the vessel M.T. Megacore Philomena in connection with two separate appeals that are before this Court today. I am going to limit my comments due to the short time to the motion for summary judgment appeal, although I'm happy to answer the Court's questions with regard to the other one if they come up. Aren't they really subsumed in the same arguments, though? They're not necessarily the same arguments, but I think one relates with the other, certainly. Yeah. I mean, also I'd like to reserve at least five minutes for rebuttal. As the Court has recently seen from the 28-J letter that was filed, the litigants that are involved today are also involved in litigation on the other side of the pond involving the very same issues that are before this Court. And the Court there recently found in connection with the summary judgment motion that the English doctrine of prevention precluded the lenders from accelerating the loan, arresting the vessel, and then still claiming an end to the claim. That doctrine is not exactly arcane, right? I'm sorry? That's not an arcane doctrine. I mean, in other words, you know, American law would have the same rule, wouldn't it? If you do something that makes it impossible to perform, then, so it's not very useful, particularly, but go ahead. Why wasn't it raised in front of the lower courts? The doctrine of prevention? Yes. I don't think we used that name. We certainly didn't even use unclean hands, but we raised the doctrine, we raised the argument that once you accelerate, you make an election, and if you take action on that election, if you arrest and seize the collateral, then you should be stopped, that you shouldn't have the right to claim an end to term breach. We made that argument. But that's different, because this thing, this doctrine depended on the fact that you did that having prevented the performance, and it was assumed to be the case in this case, and where's the record in our case that demonstrates that connection? In other words, it's not the same as simply because they accelerated, that's the end of the story. Well, I would argue, Your Honor, I would disagree and argue that I think that the fact that they accelerated and arrested the vessel, that ends the story. But we offered more than that. I think it's the same. Okay. So what is that that's in this record, unlike what was assumed in the other case? It was the other case was said and was basically on stipulated facts. Well, yeah, they stipulated that the rest of the vessel was wrongful. Here you have a court saying that's a question of fact. No, but they also stipulated that because of that, you weren't able to perform. And that's also stipulated that because of that, you weren't able to perform. That's the piece that seems to be missing in the record here as a record matter, or maybe. From a record perspective, Your Honor, I disagree. I think that that was raised. Mr. DeCoppos has declared it. It may have been raised, but does the record support it? What's the evidence? I'm sorry? What's the evidence you put in that made it? Specifically, Your Honor, Mr. DeCoppos' declaration addresses very specifically on pages 24 to 30, paragraph 70 to 89, the fact that there was, there were MOAs for the sale of these vessels at a price in excess of the value of the loan. The, yeah, on the sale, the due date, the closing date expired before they arrest the ship. Then there was the whole thing is whether there was in fact this extension. And his declaration is totally incompetent on that point. You don't believe there's evidence in this? You can't say the borrowers represented to the lenders that the thing had been extended and that that's your only evidence. And that's how I read the record. You, that's not even, he doesn't even provide any basis for why he knows that. But all he said is a representation was made, not even that the fact was true. He does say, ultimately say though, in paragraph 89 that the, that the, the MOAs were canceled as a result of the arrest. He says that very specifically in paragraph 89, the court would look at that. And I think we're entitled to, to every reasonable inferences from the facts that he does raise to suggest that he had to specifically say, well, he says he's communicating with, with the lenders and he's telling them these things. I think a reasonable inference from those facts is that they in fact occurred. Maybe, maybe not. I mean, obviously he could be telling the truth that yes, in fact, there was a representation made, but the underlying fact was not in fact true. I think we're entitled to the case law suggests that we're entitled to have his, those statements be believed. And you're saying that he only said that there was a representation. The point is that you can believe that he sold this to the lender and have no opinion at all about whether it actually happened. Right. Let's, let's ignore that for a minute and go to paragraph 89, where he says specifically, again, based on his personal knowledge, that the rest of the vessel can't resulted in the cancellation of the sales, right? That, that is unabutted in the record. What's the ER size? Is it 385? Is that where that is? Uh, the, uh, I want to make sure I'm looking at the right paragraph. 257.1 paragraph 89, which I believe is on page 30. 257.1 is the page, what page are we looking at? Yeah, page 30 lines, um, 14 through 17. This is completely unfounded. He says, since the acceleration noted notice prompted the arrest of the mega core Philomena on December 15th, prior to the schedule maturity and canceled the sale of the vessels. Okay. Is there. He's attested to the fact that there were agreements. He's tested the fact he's conveyed those agreements. He has not attested to the fact that the agreements to extend the, the, the closing date existed. He represented only that a representation had been made to the lenders that that had occurred. And I'm just saying that is not competent evidence. It might not even be competent evidence because you don't actually have the documents, but assume it was an oral agreement. He at least has to say, doesn't he, that the borrowers entered into a new agreement with the potential purchasers to extend the due date to some date past January. At least he has to say that. I'd say if he, if he says that the deal was canceled and we're entitled to have that statement credited, it doesn't make a difference whether there was an extension or not. The, let me also add that in the record, in his record, he did say that the vessel was going to be delivered and the sale consummated when the vessel arrived here in Los Angeles, the vessel arrived here, she was unloaded as part of the record and she was arrested while she was unloading again as part of his declaration. So you can infer from that, that since delivery was going to happen here, right? And the vessel arrived here that, that, that, and, and his statement that the sales were canceled as a result of the arrest, that the arrest of the vessel precluded the sales. I mean, why would that even happen? If people wanted to buy the boat, the ship, they could come in the day of the arrest and say, okay, here's your money. Here's the, we want the ship. Well, first of all, that was not the position taken by TMF. They didn't object to any of that evidence. First of all, second of all, that's not the case. As it turns out, you're talking about once you arrest the ship, you've created a cloud on the title of the vessel. You can no longer could just fix that. You've now created a cloud for any and all of the claimants to come forward. You can no longer convey legal title or possession. If other people were owed money, that was a problem before the arrest as well as after the arrest. That is, that is the case with regard to every vessel that floats on our ocean that they pay in arrears. This arrest, this, this, this invalid arrest based upon an acceleration that the court found there was a question of fact as to its validity precluded the sale and he testifies that it precluded the sale if, if the vessel was going to be delivered in LA, right? And, and the vessel that had just arrived in LA, which is again, part of his declaration, then, then the arrest while it was in LA precluded the delivery. That was the whole reason he said he conveyed to the owners, I mean, to the vendors that the date needs to be extended because the vessel wasn't going to arrive in LA where she could be turned over. Did he say when the, um, the sale was canceled? No, he doesn't say when the sale was canceled. He said it resulted in the cancellation. I don't see one reference to the record in your opening brief that would have told me what you're trying to say. Now, I don't see any ER, uh, citation, um, citation to a case that talks about what you're saying about the doctrine of, uh, preventive, uh, you're on it. I'm just listening to you kind of asking where something is, but assuring in your trying to get ready for one of these things is not a single citation to the record. That is, that is a fair criticism. However, remember our argument was from inception. And in this case, including in the cross complaint, that once you accelerate, you make an election, right? You don't, there's nothing left after you make not even any citation to the record on that or a case. I didn't know that is, that is in the opposition brief and on the motion for summary judgment and the argument. We're not reading the opposition brief in the motion to summary judgment. We're reading your appellate brief. And what Judge Whaley is saying is that reading your appellate brief, you, you, you have no citations to cases ordered to the record. Could you tell me in that connection again, where this in the record, in the ER, this, um, declaration is, what page are you relying on? Um, to 257.1, which is Mr. Lukopoulos' declaration. What does one mean? 385. 385. ER 385 is where this paragraph 89 appears. Right. And that's, that's the problem you've created because I haven't looked at it because I don't have it. Your Honor, we, we argued at page 26 of our opening brief, uh, with regard to specifically that the, the court rejected our evidence that there was a sale and that the sale was scuttled. And we pointed out that, that the MOAs that had been, the court was referring to from a previous filing of the case were mysterious in that they neglected to have signature lines, like they didn't have any signature lines at all. And that that was later corrected by stipulation. And I think the district court accepted that. Okay. The district court faulted you for the point, as I remember, for the, the fact that the guy's declaration just said that there was a representation made to the lenders and that that's all you seem to come forward to. Now you've pointed to paragraph 89. I, I got to tell you, to me, that statement is a little bit ambiguous, even in, on its own terms. Because it's talking about the notice of acceleration is what prompted the action. The, the, I agree, Your Honor, but again, the, the, the focus of our argument was that once you accelerate in dealing with English law, and if you do so wrongly, or if there's question of fact as to that, you can't then arrest the ship irrespective of whether she was sold or not. But that's a different point than the point that was in the, the prevention doctrine. That's correct. It is a different point. Therefore, this provision in this declaration. That was the argument. Doesn't go to what was in the prevention doctrine. Right. That is correct. That is, that is the argument. That's correct. And we're back to the no evidence problem. No, there's, there's, the evidence in the record is that they accelerated, that the invalidity or the validity of the acceleration is still subject to a question of fact and whether or not therefore the arrest was wrongful. And the, and that the arrest occurred. It's our position. But that's backing off from what happened in England, because that's a different doctrine. Correct. All right. So we're, we're taking that off the table. But we've argued from inception in both the opposition brief and again, in the appellate brief, that all we needed to show was that she was arrested. You, if you act in furtherance of the acceleration, and there's a question of fact as to whether the acceleration was valid in the first instance, then you, then you lose the right. It's an election that has teeth. You put all their eggs in the election, in the acceleration basket. They lose the right to then say, oh, and by the way, you still have to pay. In fact, evidence in Mr. Le Copse's declaration is that they didn't send any more notices for payments. No other payments were due. Excuse me. The opposition brief contains some British cases, other different British cases on that point of whether the, a inaccurate first acceleration precludes the possibility of having a correct second acceleration independently of any prevention doctrine. And you never respond to those cases. You don't respond to them in your opening brief or in your reply brief. What we said was, was a work around that, which was that you can't, well, you never replied to it. Well, it didn't need to be replied to. Let me explain why. Because the, the fact that, that the court found that there was a question of fact with regard to the validity of the notices precludes the finding from those cases, precludes any findings that, that, that they were of no effect. TMF's argument, Lender's argument is that the notices were of no effect. Their argument is that under English law, even if they were of an effect, that didn't, they're willing to assume for purposes of their second argument that there were an effect, but that it doesn't matter because they could still have a second acceleration. And they cite a couple of cases, Collier or something like that. Not in a situation where they, where conduct has been taken on the ship on the basis of that acceleration. It's just not an acceleration in a vacuum. They were told there was a sale. They accelerated anyway. That's the second point. You're mixing them up. Right? The first question is whether you, you, you keep moving from one to another when one of them doesn't work. So if, just a minute, if the, you argue on the one hand, just as a matter of law, that if you have one acceleration, you can't have a second acceleration. Is that not your argument? Then you argue secondly, in any event, in this circumstance, because of what happened, because of the arrest and, and so on, they could, you, you couldn't perform after the, not, not simply because of the first acceleration, but because of what else happened. Am I understanding your argument? Yeah. That's not an acceleration in a vacuum. Two different arguments. Yeah. It's, it's an acceleration with an arrest, right? It's not just an acceleration in a vacuum. And there wasn't a second acceleration. And there was a, we're going to rely on the terms of the agreement that we essentially repudiated, right? And we did use the term renunciation in our brief. We said, the case 20. But they say that under British law, that itself is not a valid theory. Nothing, as I understand it in this new case, takes that on. Is that right? No, no, no. None of the, none of the cases say that you, they say you can accelerate and you can reserve your right, but not after you're arrest. That's, that's what brings this case, this, it makes this case different from the other cases, once you arrest, you've, you've frozen your acceleration in time. And now the wrongfulness of that acceleration needs to be litigated in order for you to determine whether or not the payment at the end of term was due. There wasn't a second acceleration. All there was, was a end of term balloon payment, which they decided they didn't want to opt for. They opted for an acceleration and arrested. This would be a very different case. And I think we ought to see that had they not accelerated and not arrested or they accelerated and not arrested. If they waited until January 1st or 2nd to arrest the ship, this would be a very different case, but really it's not necessarily relevant, but it was a leverage play, right? And I'm suggesting that it's an inappropriate leverage play. Once you arrest the ship on the acceleration, you can't be heard to say, oh, it payeth anyway. I think the district court was willing to credit you with that and said, if you could show that the arrest of the ship, in fact, interfered with your ability to ultimately make that last balloon payment in late December, you'd be good to go. And she looked at, or he, I can't remember who the district judge was. Yeah, that was the magistrate judge. She looked at your evidence and said, you haven't established that. And, and I, as I said, I looked at the two things now that you've referred to, and I can't really falter for that. You had put on better proof that in fact, the arrest of the ship scuttled the sail. I think you'd, you'd be absolutely right. Well, I, again, I see, I see the court's point. I do. And I think it's, there's sufficient facts in the record. If you give them sufficient deference, which I think we're supposed to do, we're supposed to record them every reasonable inference, and they're supposed to be believed that's what the case law says, they didn't contest that, that testimony. They didn't say. I thought they, they didn't say it didn't happen, but they did say it's not sufficient. They, they, they, where they questioned without any evidence whether or not it would have happened, but I, I don't, I understand the court's position is, and, and I think that the sail issue is, isn't necessary for us to get to where we needed to go, but that I thought we offered enough for the case to go to trial, especially where there was questions of fact, precluding summary judgment as to the invalidity of the notes. Can you tell me, and I know you were about to sit down, I'll give you a minute in rebuttal, why the sail issue isn't the dispositive one, the possibility of the sail. If, if it wasn't, if you don't, if the sail could have happened, or you don't prove that it couldn't have happened, how can you prevail? We don't, we don't know what would happen. We were deprived of two weeks within which anything could have happened. We were deprived of that time by the virtue of the arrest, which the court said she could not find was, was, was valid, right? So you're, you're saying that we're too late on the 18th, what about those two weeks? What about a lender who might have been issued? What about another buyer who would have come forward? Since they declared the acceleration, which again the court said is potentially wrongful, right, we immediately, our clients immediately just started looking for buyers and they had lots of feelers out, the, the court's decision deprives us of that time between the 31st and the, and the 18th when the vessel is arrested, and I think that time is meaningful. You can't, you can't say that, that the deprivation of that time has no. Wait, now I'm confused. You're saying that it wasn't the arrest, now you're backing and saying it isn't the arrest, it was the acceleration that made it, that, that created the problem in, in, in performance, is that what you're saying? That's correct, yeah, the, the, the acceleration and the arrest, which again we haven't determined whether it was rightful or not, deprived us of the ability to sell, yes, but deprived us of the time to do something with our security. They took our security and then said with your security and both hands tied behind your back, oh, by the way, pay us. If the court rules in their favor, it's basically saying that's okay. You can go ahead and attach the security, right? You can do it on an acceleration, which may not have been rightful. You can do it early, but you can still insist that the, that the, that the security, that the, the only means of payment, which Mr. Lukopulos makes clear, it was understood from inception that the only means of payment of this loan was going to come from refinancing or selling the vessel. That he made it clear that lenders understood that, and that was part of the deal. Again, they never refuted that. So when you deprive us of that time, you deprive us of a right to do that, which we have to do with the security, and it was understood we would have to do with the security from inception in order to make that balloon payment. Okay. Thank you very much for your argument. Yes, sir. Good morning, Your Honors. James Martin for the appellees. Uh, the magistrate judge's reasoning in her succession of orders, uh, basically went unaddressed in the briefing on appeal. And it went unaddressed here this morning, where more speculation was thrown into the mix about arguments that weren't made, law that wasn't cited, and record evidence that doesn't exist. In this case, the magistrate judge entered five comprehensive orders that tracked the in rem procedures under the statutory scheme to the letter. Procedures which, by the way, provide for the fact that a vessel can be arrested and sold if that's necessary to protect the security and the value of the security. That's what happened. Now, we heard an argument here this morning that somehow the arrest was ineffective because of the acceleration notice was faulty. You will search the briefing in vain here for any argument establishing that the arrest order was wrongful in any respect. Uh, it's at, uh, the supplemental appendix. Well, if the, if the acceleration was wrongful, the arrest was wrongful, correct? No, not so, Your Honor, because at this stage of the arrest, the issue was probable cause for the arrest, which was a different legal standard than proving ultimately that the acceleration was wrongful. And this is why it's important that this is omitted from the briefing because, uh, in that hearing, the judge was fully aware about the alleged ineffective acceleration. She was aware about the shortfall. She said, but I find under any circumstances, there's a security cover shortfall here that could give rise to the notice of acceleration that was sent. And therefore... Isn't there some odd provision in the, um, agreement that you couldn't do that, that this sort of pharmaceutical thing didn't apply? No. In fact, Your Honor, that's jumping ahead, but that's a separate point and very important. There is no provision in this agreement that present prevented the sending of a defective notice of arrest. It wasn't a breach of contract. It's not effective under English law. And in fact, the contract itself expressly provides that multiple notices of default can be sent, whether they're effective, ineffective, or otherwise. But a second one wasn't sent. A second corrected one as to the, um, not the, the ultimate, um, acceleration, but the, whatever this comparison thing is of security interest. That no second one was sent on that, right? In other words, as I understand it, on any calculation, they were under the required percentage. Yes. But there wasn't a second one sent. Yes, but it wasn't, it wasn't necessary for any stage of this proceeding or the issues before this court for that to happen. For the arrest to take place, all that was needed for probable, was probable cause and a record to support probable cause. The judge's order has both. It has probable cause under the correct legal standard, and it has factual findings to support probable cause for the arrest. Okay. But, but let's, I mean, I'm just trying to understand your legal position. Let's say that it turned out that, um, they weren't underwater at all. It, there was absolutely no basis. In fact, you know, we sort of determined years later, there was no basis. In fact, to even issue any kind of an acceleration, a notice of acceleration, they should have had until the end of December to pay. You arrested the ship before then. And the arrest of the ship actually prevented them from satisfying their obligations. I assume you would admit in that case that you all would, would have problems. I assume that the argument could at least get out of the starting gate, but actually the way that the contract is structured here and the way that English law provides, that wouldn't necessarily be conclusive that we would lose on the merits. English law is very clear that a defective notice of acceleration to start with is ineffectual for purposes of other breaches of the contract. By the time of the sale, there were multiple breaches of contract alleged beyond the ones that were in the arrest. And the court allowed for that, including the maturity breach that became the basis of the summary judgment. I'm talking about at the time of the arrest. If the arrest is wrongful and the arrest of the ship is what precludes them from performing their remaining obligations of the contract, I just don't know how you could stand there and say, oh, but no, we would be fine. So you're right. I wouldn't say that was fine. And if I said that, I retract it. What my point is that there is no briefing in this case that indicates that the arrest was wrongful. In fact, it's just argument invented here on appeal. But OK, but I understand your argument about probable cause to issue the arrest warrant for the ship, that it doesn't have to be an absolute certainty fine. But I'm just saying that if the district court were to have determined here after the fact that you never had any basis whatsoever for issuing the notice of acceleration and that formed the entire basis on which I issued the arrest warrant. And so I think the court would say the arrest shouldn't have happened. You should not have been able to deprive them of their security as your opponent described it. And if and if again, if that's what prevented them from meeting their obligations, I just think, you know, you would be out of luck in that scenario. Your Honor, I'm only going to fence with that a bit because the court knew all of that at the time of the arrest and found that there was probable cause for the arrest and the findings that the court made on the security cover breach being present actually do support the probable cause standard. So we have to move forward from there when we move forward. What I'm asking, though, is it seems like I want to make sure I understand from what he said, let's assume that when the magistrate found was probable cause she was wrong and ultimately it was it was a bad notice. It seems like under English law that wouldn't make any difference. But you'd have a cause of action for the wrong. And she preserved that. Yes. I mean, you have a civil remedy for the wrongful. Your Honor, I completely agree with that. That's why I wanted said we had to move the ball forward because when we move the ball forward, what we still find out under English law is that once we have an arrest, probable cause for arrest, something that's not challenged in the briefing or arguments on appeal, then we get to the sale, we get a valid sale. And now we're after all of that, trying to determine whether this acceleration notice should unwind everything that's happened. English law says unequivocally no to that unless there's a what is your. Belief as to the pertinence or lack thereof of last week's British decision on something related, but not quite the same. So I think that London should decide London and United States should decide United States. Well, you've been arguing with English law, so it's somewhat interesting to know what London thinks English law is. Right. Maybe that was too glib. English law as applied in this proceeding and presented was certainly before the court. It certainly became the linchpin of the decision on summary judgment as it should have under the contract. And the English law was unequivocal. And as the court noted, goes unrebutted as the court also pointed out. But they're now saying something else, which is that, yes, the faulty acceleration itself would not preclude a second acceleration. But if the acceleration set in a set of circumstances, in this instance, the arrest, which supposedly precluded the sale, and I gather that was stipulated in Britain, then there is a problem. Well, am I accurate? So let me try to come at that in two ways. First, it was assumed in Britain and we have a factual record here. And then when we move to the factual record, what we find out here is the record contradicts the arguments that are being made or have been assumed in Britain. Well, it doesn't contradict it, it just doesn't establish it. Oh, no, it's contradicted. The judge walked through in this case all of these issues about the arrest preventing the sale or the agreements being in place and had doctrines in front of it that supposedly invalidated the sale. And the judge made findings on all of that and rejected it. Those assumptions can't take hold on the record in this case. And the legal result under English law in this case, we know. Now, back to my glib comment, what should happen in Britain on that record under English law and a principle that has never been urged in this case should be up to the English courts. We don't dispute that. But that decision can't parachute back into a fully litigated case here, properly decided under English law, that moves to resolution and conclusion. I mean, maybe it wasn't called a preventative doctrine or whatever, but they did say the problem was once you were arrested, accelerated and arrested the boat, we couldn't pay and we couldn't perform because we couldn't sell the boat and we couldn't refinance it. That, they said that, no? Your Honor, they said that. They might have approved it. That's a different question. They not only didn't prove it, the district court looked at that, the magistrate judge, and said it didn't happen. Said what didn't happen? I'm sorry. That the arrest did not prevent the sale. The memorandum of understanding issue did not prevent the sale. There was no, the argument couldn't take root because they didn't prove it. And there was no evidence to substantiate it. And what the contract provides- This is of interest to me. Because they didn't prove up that it actually prevented a particular sale or because they didn't prove up that they, in general, couldn't sell or refinance. They didn't prove up their whole line of argument, period, with a document, with anything that was- What about the provisions of the declaration that your opponent has relied on? So, turning to that, the provisions of the declaration don't solve the problem. They are not addressed to the issue that they need proof on in order to establish winding back to the arrest that it interfered, if we can even go to that issue, or that the sale somehow was foreclosed. In fact, it was exactly the opposite. The sale was supposedly in place, paragraph 83. It was extended. You should credit that. No evidence. So the judge said, it's not there. It isn't there. So, none of these paragraphs add up to what they need. What about the statement in paragraph 89? Right. Right. So, that was not a statement, first, that the buyers withdrew the sale agreement. It was about the arrest and its connection to the sale agreement, okay? So, that's not apples to apples in their argument. The most generous reading of that one statement that was quoted is that the arrest of the ship canceled the pending sale. No? Or what's your interpretation? No, my interpretation of that is that that dot was never connected to any agreement that would have established that the sale could have taken place. They don't get the other half of it that they need, even generously credited. Second, let's step back again and see if any of that has any legal effect in this proceeding. Let me come back to preventive again. There were declarations about English law in this case furnished by both sides. The doctrine of prevention is not mentioned anywhere in any of them. And the argument that was made in the district court by the shipholder was that the acceleration clause prevented reliance on the maturity breach. It was an exclusive election. Well, again, we know as a matter of law, that's not true. Yeah, let's put that aside. Okay, so then the question is, do we have evidence in the record to sustain a theory that was only a theory, that if it was relevant, should have come out at the time of probable cause for arrest, it wasn't proven up then, should have come up at the sale, it wasn't proven up then, and then was substantiated by hearsay evidence and incomplete ambiguous evidence at best on summary judgment at a time when the main argument that was being made had no legal effect. I don't know of a principle that governs this court's review that allows this to take root extemporaneously at the podium on an appeal. The record doesn't substantiate that. And the orders refuted by their language. The judge addressed these issues at arrest, at the interlocutory sale, at the reconsideration of the motion on the sale. It confirmed the sale, which was not objected to by a hurricane. And finally, it reinforced those issues on summary judgment. It, that closes the deal. And paragraph 89 is at best ambiguous and not addressing the issues that they need to address to get by with the judge held on summary judgment as it relates to the contract, the maturity breach, the default, and the non-payment. As a last matter, there was a general representation, which I don't know a whole lot about arrested votes, but sort of has some surface plausibility that once you arrest this vote, it's going to be awful hard to sell it or to refinance it. Does that need to be proven up as a factual matter? Is it questionable? I mean, is it sort of self-apparent? So two things. Yes, it does need to be proven up. And it's not apparent because votes get arrested all the time. The sale issue But do they get sold to third parties all the time after they're arrested? I don't know. They do. That's the in rem statutory scheme to protect the value of the security. So that's conclusively resolved by the sale. And then Well, you had a judicial sale. But they were claiming that it precluded a non-judicial sale at that point. There is no argument about the sale being wrongful that's briefed and argued on this appeal. How do we even get there? They are talking about It's not a question of the sale being wrongful. As I understand it, their point is that there were a couple of weeks in there between the arrest and the period when they should have paid the entire loan off. And had there not been an arrest during that period and an acceleration, acceleration and an arrest, they could have avoided the ultimate default. The second default, which is the one you're relying on. So let me make two points on that. And I'll reinforce it. A close reading of the court's orders on arrest, on interlocutory sale, and on reconsideration of the interlocutory sale refutes the argument. It wasn't substantiated and it didn't overcome the factual record that supported the arrest and the sale, which we haven't heard any dispute about here this morning. Second, it doesn't make the maturity breach go away, Your Honor. That was an independent default that we had the right to send the notice on under the contract that was allowed by English law. And the fact is they didn't make the final payment under the loan under that independent default that they had to. So no harm, no foul. I don't know what we call it, but we end up at the same place on a line of reasoning and a default that they have never refuted. And that was the basis of the summary judgment. That was my point. It still stands. Okay. Thank you very much. Sir, I'll give you a little time for a photo. Yes, I know, but I will give you a minute and a little more. So go ahead. Thank you very much, Your Honors. Just two things really quick. First, to not get confused about English law, the loan agreement requires the application of English law. The mortgage agreement requires the application of the Marshall Islands law, which is essentially the U.S. decisional law of the maritime states. So they arrested this vessel in foreclosing under both the loan and the mortgage. So to suggest that this is principally only a case of English law, it's not. The mortgage doesn't have an English law clause at all. In fact, it has a clause that suggests that U.S. law should apply. And they did arrest under a U.S. statute. So they invoked the benefit of U.S. law for that purpose. Just to clarify that, getting back to the issues of the motion to vacate the sale of the vessel, it's just apples and oranges. It's just not relevant to what we're talking about today, which is whether or not they had a right to arrest at the arrest. Those are different standards. We're talking about a summary judgment standard. We think we've raised a question of fact. If you believe the testimony that you're given, I'll be it slim. But if you believe that testimony, if you give all reasonable inferences from the lengthy declaration of Mr. DiCaprio's, including, by the way, that they were engaged in standstill negotiations, right, the premise of which was time was necessary to sell the vessel. So there's a state of mind there as well. And I think we've met that standard, albeit by not much, but I think we've met that standard here. Okay, thank you both very much. Thank you. Have a great weekend. The case of TMF Trustee Limited versus MT Bigger Corp Philomena is submitted, and we are adjourned for the week. Thank you very much. All rise. This part of the session is now adjourned.
judges: Berzon, Watford, Whaley